and the court will proceed to the fourth case of United States v. Ionel Muresanu. Mr. Huber? Good morning, your honors. Your honors, there is no general federal attempt statute. For an attempted crime to be illegal, the statute has to explicitly also proscribe the attempted commission of that crime. Many crimes do that. Section 1028A, aggravated identity theft, is not one of them. Yet the indictment in this case charged three counts of attempted aggravated identity theft. So, attempted aggravated identity theft, it follows, is not a crime. The primary issue in this case is whether a district court has jurisdiction to adjudicate non-offenses. This court has often criticized lower courts and litigants for calling things jurisdictional. And said, look, jurisdiction is derived from statutory or constitutional authority. And that statutory constitutional authority is set forth in Section 3231, which states that district courts of the United States shall have original jurisdiction of all offenses against the laws of the United States. Why doesn't Cotton answer that question? Because. It says that defects in an indictment do not deprive a court of the power. There's, and the government certainly tries to frame our argument here as simply a defect in the indictment. There is some tension in between Cotton and Rule 34 in Section 3231. Cotton, of course, involved a sentencing issue, really, an indictment that failed to plead a drug amount in a drug conspiracy case. And I think the concern or the questions that Cotton raises were adequately addressed by the 11th Circuit and Peter and McCoy and McIntosh. That basically says that not all defects in an indictment are the same. Isn't the 11th Circuit the only circuit to follow that narrow ruling, reading of Cotton? The 11th Circuit is the only one that's been presented with a situation like this, where the, if we want to call it a defect, was that the indictment alleged a non-offense. Every case that's addressed Cotton, every court that's addressed Cotton other than the 11th Circuit, has done so sort of in the context that this court has often addressed Cotton, which is indictments that have defects like they fail to include an element of the offense or they fail to have a mens rea. One of the cases that this court addressed was the indictment wasn't signed by the foreperson. And in each of those cases, the defendants had pled guilty. And as Cotton says, and this court has often said, a guilty plea cures all non-jurisdictional defects. So the 11th Circuit cases, I think, are really instructive for this court. On this narrow issue, which is where the defect in an indictment isn't just some routine defect, but it's a defect that strikes at the heart of the court's jurisdiction as it's set forth in Section 3231, is that we shouldn't paint Cotton with such a broad brush. So, and this is a relatively unique circumstance. In my entire career, I've never seen an indictment that alleged a non-offense. In researching this issue before the district court and before this court, I was only able to find two or three instances where the indictment essentially made up a crime. And that's what happened here. And the Duca case out of the Second Circuit, I think, is the most on point for this court's analysis. And that was a case where the indictment charged an attempted violation of Section 924C for possessing a firearm. I think it was in furtherance of a terrorism case. And the defendant went to trial, didn't raise the issue, appealed to the Second Circuit, didn't even raise the issue on appeal. And before the Second Circuit, the government recognized and alerted the court that it wasn't going to defend Duca's conviction, or there were several defendants in that case, I'm not sure which defendant it was, but that they weren't going to defend that conviction because what the defendant was convicted of was not an actual crime. So I don't think that Cotton addresses the problem raised by the indictment in this case. The government seems to argue that the district court cured the defect by amending the indictment. At the instruction conference, mid-trial, the court, after the defense moved under Rule 29 for an acquittal and raised the issue of the attempt charge, the court eliminated the attempt language from the instructions that was presented to the jury. And I guess that's sort of the second kind of dovetailing issue in this case. I guess to sort of state the obvious, by lacking jurisdiction to adjudicate a case, the district court lacked the jurisdiction to even have the authority to amend the indictment, whether the amendment might otherwise be permissible or not. And it's our position that even if the court had jurisdiction to amend the indictment, this isn't the sort of amendment that this court and the Supreme Court have recognized as being suitable. The district court called this a typographical error. Including the words attempt to in an indictment is not a typographical error. It's a significant difference between the two things. One is a crime. One is not. If attempt was permitted under 1028A, they would be separate crimes. This court has long made clear that the attempted commission of a crime and the completed offense are actually separate crimes. So this was a significant change. It is true that the other, I guess, exception to the rule against constructive amendments in Sterone and Leichtman, is that amendments are permitted if it narrows the possible bases for conviction. And this court in Leichtman identified two scenarios where an amendment might narrow the basis of conviction. One is if you have a multi-count indictment and during the trial the government elects to drop one of the counts. The second would be where an indictment alleges a single count charges more than one commission of the same offense or more than one way of committing the same offense. A good example is actually in the Duca case there was an additional count where one of the defendants was charged with attempting to possess a firearm in furtherance of attempted 924C and actual 924C. And in that count, it was because there were two possible bases to convict on that count, those convictions were able to stand. A more classic example is if someone has multiple firearms and is charged with possessing a firearm as a convicted felon and trial that government elects not to prove multiple guns but just one gun. That would be sort of the other type of permissible amendment. And that's not what we're dealing with here. Again, attempted commission of a crime and the completed offense are separate offenses. The government spends quite a bit of time arguing no prejudice here. Assume we have jurisdiction and assume that this is a constructive amendment as you're arguing and not just a variance. What impact should the prejudice aspect have on the court's analysis? Does it come into play at all? It doesn't come into play. There's no obligation for us to prove there's prejudice. Where there's an indictment, it's per se reversible error. But there have—I'm sorry, Your Honor. It appears from the record that the defense lawyer, and I don't know if you were the lawyer. I was. Okay. It appears that you knew about this defect before the trial started, given your strategy. When you raised it with the district court after all of the evidence had come in, is there anything, in your view, the court could have done at that point to cure it? The court, in our view, should have dismissed those counts at that time. In our view, that's the only—and I think Rule 34 in our motion to arrest judgment, that was the claim made at that point is the only way to cure this error is to dismiss or send it back to the grand jury. Given that you knew about—I'll assume you knew about the defect before the trial started, Rule 12 is designed to avoid this gotcha impact. And I know Rule 12 deals with the front end of this, not the back end. But what impact should that have here? This really does seem a little bit like a gotcha. If there's a mistake you knew about, it could have been cured before trial, but because it wasn't brought to the court's attention until the end of the evidence, that the court may be stuck. Yeah, I agree that the defense could have raised this pretrial. It didn't have to. Rule 12, of course, requires that motions challenging the sufficiency of the indictment or motions alleging that the indictment, quote, fails to state an offense should be raised pretrial. Well, this court has kind of identified two ways where an indictment might fail to state an offense, and this isn't one of them. Those are where an indictment either fails to plead each element of an offense, and that's not what we're dealing with. The other is if the conduct alleged falls outside the scope of the charged offense. So you don't think you could have challenged this under Rule 12 in the first instance? I think we could have. I think Rule 34, an arrest of judgment, can be made really at any point before trial, during trial, after trial. Obviously, the court was not appreciative of the timing. I don't think the government was appreciative of the timing either, and certainly we could have gone that route. But there's nothing that required us to. We saw, candidly, an error in the indictment. We believe that my client couldn't be convicted of the offense that was charged, and we went to trial on that theory, which kind of dovetails back to the issue of prejudice, which was, that's why we went to trial. Had this case been appropriately charged, it's likely that my client would have pled guilty. But had he pled guilty to the offenses that were charged in Counts 2 through 4, we would be in a situation where possibly he comes back to this court years down the road and says, hey, I was convicted of this thing and it wasn't a crime. And I think the court would likely frown upon that approach as well. Why isn't this like omitting an element? Because omitting an element of an actual crime, an indictment still alleges an actual crime. This is different than omitting an element because it strikes at the heart of the court's jurisdiction under Section 3231. It's a non-offense. We can't have people convicted of crimes sitting in prisons for things that are not unlawful. If the conviction is vacated on those three counts, can your client be indicted for the substantive offense for those accounts? I think that's a very good question. And I think the answer to that, there's good arguments probably on both sides. Candidly, I haven't spent a lot of time addressing that issue. But, you know, I guess that would be, we'd have to wait and see. I'm going to reserve the rest of my time for rebuttal. Thank you, Your Honors. Thank you. Ms. Craft. Good morning, Your Honors. May it please the Court, Carol Craft, Assistant United States Attorney representing the government in this case. Could you answer Judge St. Eve's question about could you retry? I would assert that we could under the circumstances of this case. Our position, though, Your Honors, is that Federal Rule of Evidence, excuse me, Federal Rule of Criminal Procedure 12 in the United States v. Cotton controls in this case and should dictate the outcome of this appeal. Rule 12 has always required that certain claims that can be resolved without a trial and the merits be raised before trial, absent good cause. The 2014 amendments to Rule 12 did two things. It added a list of, a non-exhaustive list of claims that must be raised before trial. One of those is a claim that indictment doesn't state an offense. It says must be raised, not if you feel like raising it because you have a strategic reason not to. It says this is a claim that must be raised. The other thing that the amendment to Rule 12 did, as reflected in the advisory committee notes, is that it took out the language that allowed a court at any time to hear a claim that the court didn't have jurisdiction as a result of a defect in the indictment. And so the defendant in this case, knowing that in fact there was this defect in the indictment, chose to forego his obligation under Rule 12 to bring that to the court's attention and instead decided to use it as a strategic decision to achieve an outcome that he knew he couldn't otherwise achieve and that he believed that he knew that he wasn't entitled to achieve under the enormous amount of evidence in this case. Sorry, I'm going a bit fast here. It's our position in this case that by failing to raise this issue pretrial under Rule 12 as he was required to do, he has basically waived his right to contest the defect in the indictment. He hasn't waived jurisdiction, but Rule 12 has taken care of that. No longer is a defect in the indictment a reason to deny a court jurisdiction. And that's consistent with United States v. Cotton, and that's the very reason, if the court reads the advisory committee notes, that the rule was changed. It was changed in light of Cotton because, Your Honors, every single jurisdiction that has assessed circumstances like this have found that Cotton applies to all defects in indictment. Now, Judge Sykes had a question to counsel as to what's the difference between omitting an element of an offense and having extra verbiage that doesn't belong in the indictment itself. There is no difference. Both of them do not charge a crime against the United States. Both of them represent a defect in the indictment. So the fact that this indictment, and to be honest, it was sloppy drafting. The judge treated it when he omitted the words from the jury instructions as a typographical error. It was a drafting error. It shouldn't have happened. But I think that Rule 12 recognizes that these things do happen because this is exactly one of the common causes or common claims that Rule 12 says must be raised before trial. So are you arguing that by failing to raise this pre-indictment under Rule 12, that he has now waived his right to argue this was a constructive amendment? Well, yes and no. We're arguing that he's waived both his right to challenge the indictment in the first instance, but also his right to challenge the court's fix in this case. He waited too late, and he didn't raise the Fifth Amendment challenge at trial when the court indicated that it was going to strike the words from the jury instructions. We ask, the government asks, that the words be stricken as surplusage. The words attempt to. What counsel said was that that would be a variance, and we agree. We agree that it would be a variance, but we submit that it would be a permissible variance under these circumstances. But he said it would be at trial. I don't recall if he used variance or not, but he said, objected to it and said it was improper that the word should not be stricken. He did. When we said the word should be stricken, he said, you know, I object. That would be a variance. He used that very word. And then when the court came back with its final instructions, he indicated that he wanted the jury to be instructed with the attempt language. He wanted the court to leave it in. He didn't make any Fifth Amendment argument at that point in time. He just said, this is what the grand jury charged. This is how the jury should be instructed. So there was no, I think, proper objection at the time that the court was considering these changes to the jury instructions. Just to clarify your jurisdictional argument, you're not arguing that jurisdictional issues must be raised before trial by motion under Rule 12? No. No. And you can't waive jurisdiction. Right. You're arguing that this is not jurisdictional under COPS. Right. Our argument is that under Rule 12, a defect in an indictment is no longer a jurisdictional issue. It doesn't deprive the court of jurisdiction. Where does it say that? Where does it say that in Rule 12? Right. In the advisory committee notes to the 2014 amendment, it says... It's not in the rule itself. We didn't expect it to be there. No, but the rule has removed the language. The advisory committee notes say... That's just the committee's view of how to interpret Cotton. That's not binding. Well, it takes out of the rule itself the language... It has nothing to do with whether this type of defect is jurisdictional or not. And the rule doesn't require jurisdictional issues to be raised before trial. So the jurisdictional issue stands apart from any issues of waiver or variance. The rule says that this type of defect is no longer a jurisdictional issue. It doesn't say that. That's the committee's view of how to interpret Cotton. And we interpret Cotton in the first instance for ourselves. So what's your best case that Cotton... Cotton had to do with factual defects in the indictment. It did. Not a legal defect in the indictment. And I think most of the cases... The follow-on cases and the predecessor cases also had to do with factual defects in the cases. Where there was no crime charged because of factual defects in the cases. The congressman can't be an officer of the United States, etc. But what we're talking about is a legal defect. We're talking about surplus language. When you look at the indictment, the indictment alleges that this is aggravated identity theft. It cites the correct statute. It contains all of the requisite elements, but it has two words that are surplus. It's a drafting error. Those didn't belong there. That's not different, I would submit, than a circumstance where an indictment left out an element. That's an argument that there was no defect. That the indictment, because it cited the proper statute, was sufficient to charge a real crime, even though it said attempt, which is not a real crime. But that's a different argument. That's just an argument that there was no defect. The stray word attempt had no legal effect. Well, it didn't once the court fixed it. But that's essentially your argument, that it's meaningless from a jurisdictional standpoint. Because the statute was cited. The statute's a real crime. The elements were covered, right? All of the courts that have interpreted cotton, and not every circuit has, all of the courts that have interpreted cotton since it was decided, have held that cotton applies to all defects in the indictment, not just the type of defect where an element is omitted. The 11th Circuit. Except the 11th Circuit. And the 11th Circuit is really an outlier. And the seminal case, the case that the 11th Circuit relies on, which is Meacham, it's a 1980 case, has since been abrogated by the 5th Circuit. It was a 5th Circuit case. I realize that the 11th and 5th were at one time one circuit. It's been abrogated by Cothram, I believe the case is, I think in 2002 or 2003. And Cothram held that defects in indictments are no longer jurisdictional, and standard waiver principles apply. And the 5th Circuit has continued to take that position in other cases that the 5th Circuit has held. The 10th Circuit also, in Devon, and that's cited in our brief, has, I think, taken a fairly extensive analysis and also takes the position that defects in indictments don't deprive a court of jurisdiction. And the only, I believe that the only, and has rejected, I think, the language and the holdings of the 11th Circuit cases. The 11th Circuit is really the outlier. It's the only circuit that continues to find that defects in indictments are jurisdictional. And so I think that the reasoning in those other circuits are really more compelling than the argument that's being advanced here today. The thing about what has happened in this case is that it was a strategic decision by the defendant to forego the requirement of Rule 12 and to wait and surprise both the government and the court with this motion, disguised as a Rule 29 motion, when it's a motion that should have been brought before trial. If it had been brought before trial, it could have been fixed easily. The government could have gone back to the grand jury and gotten a superseding indictment. And in fact, this court in Nixon last year talked about how important Rule 12 is to the efficient administration of justice. And I believe it was Judge Easterbrook that said it does several things. It allows the government to go back and appeal things that it won't be able to appeal after trial because of double jeopardy. It allows parties to carefully brief complex issues so that they're not being decided on the fly. And it prevents game playing. And that's one of the things that happened in this court. This was a game. The defendant knew that he could not achieve the result that he wanted by going to trial on the merits. And so he had this in his back pocket, just the kind of tactic that the case in Nixon, this court's decision in Nixon, said ought not to occur. And if it had not been a strategic decision, if it had been neglect to raise this, it might be a forfeiture issue. But I would submit that the defendant has waived his right to allege that this indictment was defective and complain about the court's fix on this. He had an opportunity to address this, as he should have, under Rule 12, and he neglected to do so. Ms. Graff, so you don't believe this is a constructive amendment. What if there was a missing element? Could a judge do what the district judge did here? That's a good question. Your Honor, I think that all of the cases that really have addressed the situation where there's a missing element have been plea cases. I haven't found any in my research that involved a case where a defendant went to trial and then got to the point where jury instructions were about to be crafted and delivered and there was this missing element. So I would submit that if there was no proper objection in that circumstance, that a court would be allowed to do exactly what this court did in this case, to craft the instructions in a way that contained all of the elements and properly instructed the jury. In that situation, we would review any argument about variance just under the plain error standard? I would think. There was a failure to object. Right. And in this case, there really wasn't any prejudice to the defendant. The grand jury testimony... But does that matter under Sterone? Pardon? Does that matter under Sterone, which is that if there's a constructive amendment, it's not subject to any kind of harmless error review? Well, and again, we were asking this court to find that it was a variance and not a constructive amendment. But... A permissible variance. Those are very narrow categories. A permissible variance, yes. I see my time is up. With respect to the other issues in this case, the guideline issues, the government would rest on its brief. Thank you. Mr. O'Leary, I think you had 20. You can have two minutes. Thank you, Judge. One of the issues raised by Your Honor as to what if an element was omitted, that's basically what happened in the Leichtman case, and that was a trial case involving a gun, and the indictment pled one gun, but the court's instructions allowed an inference that it was a different gun that was possessed in furtherance of a drug crime. If, as Section 3231 purports, the only way that a court can lack jurisdiction is if an indictment doesn't charge an offense against the laws of the United States, but a non-offense is a mere defect in an indictment, then there isn't a scenario under which a district court would lack jurisdiction. And Section 3231 is pretty clear that, again, if it doesn't, if an indictment, if it's not an offense against the laws of the United States, then it would be, then a court doesn't have jurisdiction. And the government, it's really a failure to address our arguments on the 11th Circuit's distinctions, I think, are significant here. And in McIntosh, the court said that Cotton makes clear that jurisdiction is not inherently tied to indictments. Rather, jurisdiction depends on stating offenses against the laws of the United States. An indictment's relationship to jurisdiction is based on whether it alleges conduct constituting a federal offense, not on some intrinsic value of an indictment as such. And that's really kind of the thesis of our position here. I know we haven't touched on the sentencing errors in this case. We submit that remand is necessary to vacate these convictions, but we'll rest on our briefs on the sentencing errors as to Count 1, which isn't affected by this appeal.